UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BRENDEN G. GLINTON,

     Petitioner,

                     Case No. **8:11-CV-717-T-23MAP**
                                    **8:04-CR-186-T-23MAP**

                                    **8:11-CV-718-T-30TGW**
                                    **8:07-CR-361-T-30TGW**

UNITED STATES OF AMERICA,

     Respondent.

_____/

## O R D E R

This cause comes on for consideration of Petitioner's Motions under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (8:11-CV-717 D-1; 8:04-CR-186 D-84 and 8:11-CV-718 D-1; 8:07-CR-361 D-167)[1], the Government's response in opposition thereto (8:11-Cv-717, D-9; 8:11-CV-718, D-8), and Petitioner's reply (8:11-Cv-717, D-16; 8:11-CV-718, D-15).

A Third Superseding Indictment was filed on September 11, 2007, charging Petitioner with conspiracy to possess with intent to distribute 5 kilograms or more of cocaine from 2000 until at least July 30, 2003, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(ii) and a single distribution of 500 grams of cocaine on April 24, 2003, in violation of 21 U.S.C. §

---

[1] Petitioner filed a single § 2255 motion and memorandum addressing his convictions and sentences in both of his underlying criminal cases.

841(a)(1) and (b)(1)(B)(ii). (Case No. 8:-04-Cr-186-T-23MAP, D-1.) On February 22, 2008, Petitioner made his initial appearance and attorney Todd Seiden was appointed to represent Petitioner. Petitioner proceeded to trial on May 19, 2008. After a three-day trial, the jury found Petitioner guilty of both Counts of the Third Superseding Indictment.

On May 6, 2007, Petitioner and his co-defendant Jerome Major were arrested and a Complaint was filed against them on May 7, 2007 for possessing with the intent to distribute more than 500 grams of cocaine in violation of 21 U.S.C. § 841(a)(1). Attorney Seiden was appointed to represent Petitioner. On September 11, 2007, Petitioner and Major were charged by an Indictment with conspiracy to possess with the intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(ii) and distribution of 500 grams or more of cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(ii) and 18 U.S.C. § 2. (Case No. 8:07-Cr-361-T-30MAP.) They both proceeded to trial and on June 11, 2008, a jury found them guilty of both counts of the Indictment.

The Court consolidated Petitioner's cases for purposes of sentencing and on August 14, 2008, the Court sentenced

Petitioner to a term of imprisonment of 169 months in each case, the terms to run concurrently. Petitioner appealed. Attorney Ryan Truskoski substituted as counsel for Petitioner on appeal. The Eleventh Circuit affirmed his convictions and sentence.

Petitioner timely filed his § 2255 motion. Petitioner raises various claims of ineffective assistance of counsel including that his trial counsel failed to (1) notify him about certain Government witnesses; (2) adequately represent him before and during sentencing; (3) correct false testimony at trial; (4) object to the amount of cocaine based on relevant conduct; (5) move to suppress evidence of Curtis Saunders' violation of bond conditions; and (6) challenge the jury's special finding in Case No. 8:04-Cr-186 and move for a judgment of acquittal and new trial.

The Government responds that some of Petitioner's claims are procedurally barred because he failed to raise them on appeal. The Government further argues that Petitioner fails to demonstrate that his counsel's performance was constitutionally ineffective or any resulting prejudice.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Claims of ineffective assistance of counsel require a showing

of the two-prong test as set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). In order to succeed under the Strickland test, a movant has the burden of proving: (1) deficient performance by counsel; and (2) prejudice resulting therefrom. Id. at 687.

The first prong of the Strickland test requires the Court to determine whether trial counsel performed below an "objective standard of reasonableness," while viewing counsel's challenged conduct on the facts of the particular case at the time of counsel's conduct. 466 U.S. at 688, 690. Notably, there is a strong presumption that counsel rendered adequate assistance and made all significant decisions with reasonable and competent judgment. Id.

A counsel's performance is deficient if, given all the circumstances, his or her performance falls outside of accepted professional conduct. Strickland, 466 U.S. at 690. "Judicial scrutiny of counsel's performance must be highly deferential," and "counsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken "might be considered sound trial strategy." Chandler v. United States, 218 F.3d 1305, 1313-14 (11th Cir.2000) (en banc) (quoting Strickland, 466 U.S. at 689 and Darden v. Wainwright, 477 U.S. 168 (1986)). Rather, for counsel's conduct to be unreasonable, a petitioner must show that "no competent counsel would have taken the action that

4

his counsel did take." Chandler, 218 F.3d at 1315.

The Supreme Court has consistently held that "as a matter of law, counsel's conduct ... cannot establish the prejudice required for relief under the second [prong] [o]f the Strickland inquiry." Nix v. Whiteside, 475 U.S. 157, 175 (1986). This admonition emphasizes the stringent requirement that if a petitioner does not satisfy both prongs of the Strickland test, "he will not succeed on an ineffective assistance claim." Zamora v. Dugger, 834 F.2d 956, 958 (11th Cir. 1987). See also Weeks v. Jones, 26 F.3d 1030, 1037 (11th Cir. 1994). Therefore, a court may resolve a claim of ineffective assistance of counsel based solely on lack of prejudice without considering the reasonableness of the attorney's performance. Waters v. Thomas, 46 F.3d 1506, 1510 (11th Cir. 1995) (citing Strickland, 466 U.S. at 697).

With regard to the second prong, the petitioner must show there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, at 694-95. A reasonable probability is a probability "sufficient to undermine confidence in the outcome." Id. at 694. A petitioner must show a "substantial, not just conceivable, likelihood of a different result." Cullen v. Pinholster, − - - U.S. ----, 131 S.Ct. 1388, 1403 (2011) (citation omitted).

With the foregoing standard in mind, the Court turns to

Petitioner's specific claims of ineffective assistance.

## I.  Failure to Inform Petitioner of Government Witnesses

Petitioner contends that his counsel failed to disclose to him information relating to the debriefings of Joseph John Jones and Yvette Hendrix and failed to investigate these people.  He suggests that his counsel should have required the Government to produce them as witnesses at trial to test their credibility.  He argues that had Jones and Hendrix testified at trial, they may have contradicted testimony of other Government witnesses.

According to information in the Presentence Investigation Report, Jones and Hendrix were customers of Petitioner.  Jones was a co-defendant of confidential informant Curtis Saunders in another drug case, Case No. 8:06-Cr-505-T-23MSS.  Jones pled guilty in April 2007 and cooperated with law enforcement. According to the PSI, Jones told law enforcement that he received approximately 15 kilograms of cocaine from Petitioner.  He said he cooked cocaine into crack yielding two kilograms of crack for every kilogram of cocaine he purchased from Petitioner.  (PSI ¶ 14-15.)

The PSI indicated that Hendrix was another of Petitioner's customers.  Hendrix debriefed to law enforcement

and estimated that she personally received at least 10 kilograms of cocaine from Petitioner. She further stated that she was present on at least 30 to 40 other occasions when Curtis Saunders received one to five kilograms of cocaine from Petitioner on each occasion. (Id. at ¶ 15.) Neither Jones nor Hendrix testified at either of Petitioner's trials, although Hendrix was included on the Government's Witness List. (04-Cr-D-39, ¶ 13.) Furthermore, Michael Arline and Curtis Saunders testified that Hendrix and Jones were among Petitioner's customers.

Petitioner's counsel could not force the Government to call Jones and Hendrix to testify in the Government's case-in-chief. Therefore, Petitioner's claim that his counsel was ineffective in failing to require the Government to produce them to testify at trial is meritless.

To the extent Petitioner claims that his counsel was ineffective in failing to call Hendrix and Jones to testify in his defense, this claim fails. Specifically, presentation of witness testimony is a matter of trial strategy. Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978); accord United States v. Guerra, 628 F.2d at 410, 413 (5th Cir. 1980). Petitioner has the burden to establish facts showing counsel's

failure to call witnesses rendered his trial fundamentally unfair. <u>Coon v. United States</u>, 441 F.2d 279 (5th Cir. 1971). Petitioner's burden in this regard is heavy "since the presentation of testimonial evidence is a matter of trial strategy and often allegations of what a witness would have testified to are largely speculative." <u>Guerra</u>, 628 F.2d 410, 413 (citation omitted). "Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess." <u>Waters v. Thomas</u>, 46 F.3d 1506, 1512 (11th Cir.1995) (en banc).

Here, Petitioner merely speculates that Hendrix and Jones may have provided testimony that may have discredited the testimony of other Government witnesses. He fails to present evidence of any actual testimony or affidavits from Hendrix and Jones. Petitioner's conclusory allegations are insufficient to support a finding of ineffective assistance.

## II. Ineffective Assistance at Sentencing

Petitioner next contends that his attorney did not discuss the PSI with Petitioner until the actual day of sentencing. Petitioner also argues his attorney did not object at sentencing to amount of drugs attributable to

8

Petitioner. Petitioner argues that the jury found him guilty of five kilograms or more of cocaine so he should not have been sentenced for more than that amount.

First, at sentencing, Petitioner agreed he had reviewed the PSI and the addendum with his attorney (04-Cr, D-60, p. 3.) He did not complain to the Court about his attorney's representation nor did he ask for more time to discuss the PSI with his counsel. Furthermore, it is clear from attorney Seiden's statements at the sentencing hearing that he had in fact discussed the PSI with Petitioner. Second, Petitioner has not shown that had his counsel discussed the PSI with him prior to the day of sentencing, the outcome of the sentencing hearing would have been different.

Additionally, attorney Seiden in fact objected at the sentencing proceeding to the quantity attributed to Petitioner. Attorney Seiden stated that Petitioner disagreed with the total amount of drugs he was attributed in the PSI and that Petitioner felt his offense level should be equivalent to the amount of drugs found by the jury, that is, five kilograms or more of cocaine, which was equivalent to an offense level 32. (Id. at p. 3, 4-6.) Seiden stated:

there's a few witnesses[2] that were listed by the
Government, or cited by the Government in the
Presentence Report that did not testify that placed
him with even more drugs.  It doesn't affect his
level of what he admitted to, uh, but that's my
client's position, that the jury did not find, uh,
the total amounts that were cited in the Presentence
Report.

(Id. at. p. 5.)  He continued:

the specific objection is my client believes that
the jury verdict form only cited five kilograms or
more of cocaine, there were no specific findings of
more than five kilograms or more of cocaine,
although the witnesses have testified to the -- to
the — to the amounts....there are witnesses that testified at trial that placed more
than that cocaine in there, and also a proffer was done.

My point of contention is really pinning him
with drugs that either Ms. Hendricks [sic] or
another individual stated that were not testified at
trial, but that doesn't change the level, that's my
point of contention, but it doesn't change the
level.

My client is actually saying, well, because the
verdict form was five kilograms or more, and didn't
-- there was not a specific finding by the jury of
anything more than five kilograms, then the level
should start out at 32.

(Id. at p. 6.)

The Government responded that the Petitioner should be held

accountable for at least 115 kilograms.[3]  The Government explained

---

[2]    It appears that Hendrix and Jones were the persons to which
Seiden was referring.

[3]  The Government further argued, albeit unsuccessfully, that
Petitioner should also be held accountable for an additional two
kilograms because he admitted that he was stopped in June 2001 with
$50,000 that was proceeds from the sale of cocaine.  Probation, however,

that the amount was supported by the testimony at the trial in addition to interviews with cooperating witnesses. (Id. at p. 7.) The Court found that it would adhere and follow the calculation as reflected in the PSI. (Id.)

In any event, Petitioner fails to show that, but for his attorney's conduct, there is a reasonable probability that the result of the sentencing proceeding would have been different. Even without considering the proffers of Hendrix and Jones, the Court could easily find by a preponderance of the evidence presented at trial that Petitioner was responsible for at least 50 kilograms of cocaine. At trial, Arline testified that he received at least 30 kilograms of cocaine from Petitioner and Godfrey Fox, a deceased co-conspirator. Saunders testified that he received between 20 and 50 kilograms from Petitioner. Furthermore, it appears that Petitioner's proffer to law enforcement also supported a finding of at least 50 kilograms.

Whether Petitioner was responsible for 50 kilograms or 115 kilograms of cocaine made no difference in his base offense level. Specifically, an offense that involved at least 50 kilograms but less than 150 kilograms of cocaine

---

did not include that additional quantity "because the defendant may have considered it in his estimation of the number of smuggling trips he made to the United States." (PSI Addendum ¶ 1.)

warrants a base offense level 36. U.S.S.G. §
2D1.1(a)(3)(c)(2). In determining the applicable guidelines
range, the Court started with a base offense level of 36 and
then granted a two-level decrease under the safety valve
provision, U.S.S.G. §5C1.2

Finally, counsel for Petitioner argued on appeal that
this Court had erred at sentencing by imposing a sentence
based on more than 5 kilograms of cocaine. The Eleventh
Circuit rejected the argument and affirmed Petitioner's
sentence. Petitioner may not relitigate the issue here.
Specifically, "[t]he district court is not required to
reconsider claims of error that were raised and disposed of on
direct appeal." United States v. Nyhuis, 211 F.3d 1340, 1343
(11th Cir. 2000) (citing United States v. Rowan, 663 F.2d
1034, 1035 (11th Cir. 1981)). "[O]nce a matter has been
decided adversely to a defendant on direct appeal it cannot be
re-litigated in a collateral attack under section 2255."
Nyhuis, 211 F.3d at 1343 (citation omitted); Mills v. United
States, 36 F.3d 1052, 1056 (11th Cir. 1994) ("prior
disposition of a ground of error on direct appeal, in most
cases, precludes further review in a subsequent collateral
proceeding").

## III.      Relevant Conduct

Petitioner contends that his counsel was ineffective in failing to object to the Court's lack of jurisdiction to take into account whether other cocaine transactions constituted relevant conduct associated with his crime.  Petitioner contends that he should only have been held accountable for those drugs relating to the charges in the Indictment and any quantity beyond 5 kilograms were part of conduct on separate occasions and should not have been considered.

Petitioner's claims are completely meritless.  The 2004 Third Superseding Indictment charged a conspiracy to possess with intent to distribute cocaine from at least the year 2000 through July 30, 2003.    (04-Cr-D-1.)   The Government presented testimony at the trial relating to the 2004 case that Petitioner was initially a drug courier for Fox and then took over the cocaine distribution after Fox's death in March 2003.  Arline estimated he received at least 50 kilograms from Fox in one year.  Arline further estimated that Petitioner supplied him with two to four kilograms on each of six to eight occasions between Fox's death and July 30, 2003. Saunders testified that he began receiving cocaine from Petitioner as early as 1997.  He estimated he received between  20 and 50 kilograms from Petitioner.  This evidence supported the jury's finding that Petitioner was guilty of conspiracy to possess with the intent to distribute more than 5 kilograms.

The Indictment in the 2007 case charged a conspiracy from an unknown date through May 6, 2007. At trial, the Government introduced evidence that law enforcement had seized 982.1 grams of cocaine hydrochloride from the vehicle Petitioner was driving at the time of his arrest. The Government further presented evidence that Petitioner admitted to law enforcement he was to deliver the cocaine to Saunders. Thus, there was sufficient evidence to support the jury's finding that Petitioner conspired and possessed with the intent to distribute 500 grams or more of cocaine in that case.

The foregoing evidence from the trials also supports this Court's utilization of a base offense level 36 as the conspiracy in the 2004 case alone involved at least 50 kilograms. As stated above, Petitioner's appellate counsel raised an issue on appeal regarding the Court attributing more than 5 kilograms of cocaine to Petitioner at sentencing and the Eleventh Circuit rejected the claim.

**IV. Failure to Correct False Testimony of Curtis Saunders**

Petitioner next claims that Government witness Curtis Saunders falsely testified at trial that he was not promised anything in return for his testimony. Petitioner claims his counsel was ineffective in failing to raise the issue during the trial or on direct appeal and that his counsel's failure to correct the testimony rendered the trial unreliable and fundamentally unfair.

Neither of these claims has merit as Petitioner fails to demonstrate that Saunders falsely testified at either of Petitioner's trials. Saunders testified in the trial related to the 2004 case on May 21, 2008. (04Cr-D-47, p. 22-66.) He testified that he pled guilty to Federal drug charges pursuant to a plea agreement which included provisions about cooperating with the Government. He stated his testimony was part of that cooperation. Saunders testified that he cooperated with law enforcement in other investigations prior to his August 2007 sentencing and that he had received a lesser sentence based on that cooperation. On cross-examination, attorney Seiden asked Saunders, "Are you hoping to get some type of Rule 35 consideration by testifying here today?" to which Saunders responded, "Well everyone wants to go home, yes, sir." (Id. at p. 60.) He indicated that if he indeed got a Rule 35, "I would like it." (Id.)

On June 10 and 11, 2008, Saunders testified in the trial related to the 2007 case. He testified that he pled guilty to Federal drug charges pursuant to a written plea agreement. (07-CR-D-128, p. 211-12.) He explained that two of his charges were dropped in exchange for his entering a guilty plea. (Id. at 212; 07-CR-D-129, p. 13.) Saunders admitted that, as part of his plea agreement, he agreed to cooperate with the Government and that his trial testimony was a part of his continued cooperation. (07-CR-D-128, p. 212-213.) Saunders also admitted that his 130-month

sentence of incarceration in his own case was a result of his cooperation with law enforcement. (Id. at 213-14, 253.)

The prosecutor specifically asked, "Mr. Saunders, have any promises been made with respect to your testifying here today in terms of your sentence?" Saunders replied, "No, ma'am." (Id. at 214.) The prosecutor then asked, "Do you have any benefits that you hope to receive by testifying today?" Saunders responded, "Well, no, ma'am. I have to finish what I had started with this plea." (Id.) When the prosecutor asked, "[y]ou mean you had to comply with the plea agreement?," Saunders responded, "Yes, ma'am." (Id.) Saunders also testified that his plea agreement included a provision that he tell the truth and that his failure to do so could result in a perjury charge. (07-CR-D-129, p. 9.)

On cross-examination, defense counsel asked Saunders if he hoped to get a Rule 35 reduction in sentence by testifying, to which Saunders responded, "Well, everybody hopes to get – you know, go home sooner." (07-CR-D-128, at p. 252.) Defense counsel then asked, "also you want a sentence reduction, you want to get something below 130 months, right?" Saunders responded, "Well, I have to do what I'm doing because it's in my plea. So, if it comes, it comes. If it doesn't, it doesn't." Defense counsel asked, "But you're hoping by testifying here today that it will come, right?" Saunders admitted, "Yeah, anyone that's incarcerated will hope that, yes, sir." (Id.)

16

The above testimony shows that Saunders admitted in both cases that he pled guilty pursuant to a written plea agreement and that his cooperation with law enforcement had already resulted in him receiving a lower sentence.[4] He also specifically admitted that he hoped that his testimony at Petitioner's trials would result in a further reduction in his sentence pursuant to Rule 35.

In each case, the Court instructed the jury that it must consider with more caution the testimony of some witnesses. (04-Cr-D-33, p. 8; 07-Cr-D-87, p. 8.) In the 2004 case, the Court instructed:

> In this case the Government called as one of its witnesses a person named as a co-conspirator, who is a defendant in a different indictment, with whom the Government has entered into a plea agreement providing for the possibility of a lesser sentence than the witness would otherwise be exposed to. Such plea bargaining, as it's called, has been approved as lawful and proper, and is expressly provided for in the rules of this Court. However, a witness who hopes to gain more favorable treatment may have a reason to make a false statement because the witness wants to strike a good bargain with the Government. So, while a witness of that kind may be entirely truthful when testifying, you should consider such testimony with more caution than the testimony of other witnesses.

(04-Cr-D-33, p. 8.)

In the 2007 case, the Court specifically instructed the

---

[4]    Notably, while Saunders was sentenced on August 6, 2007 and received a downward departure based on his cooperation, Saunders' assistance to law enforcement was not limited to the cases involving Glinton. The record demonstrates that Saunders provided information to law enforcement regarding multiple individuals prior to his sentencing and was prepared to testify in other trials that were held prior to Petitioner's trial. (07-CR-D-129, p. 10.)

jury that:

> [A] paid informer, or a witness who has been
> promised that he or she will not be charged or
> prosecuted, or a witness who hopes to gain more
> favorable treatment in his or her own case, may have
> a reason to make a false statement because the
> witness wants to strike a good bargain with the
> Government.
>
> So, while a witness of that kind may be entirely
> truthful when testifying, you should consider that
> testimony with more caution than the testimony of
> other witnesses.

(<u>Id.</u>)  The Court also instructed the jury in each case that

"[t]he fact that a witness has been convicted of a felony

offense, or a crime involving dishonesty or false statement,

is another factor you may consider in deciding whether you

believe that witness."  (<u>Id.</u> at p. 6; 04-Cr-D-33, p. 6.)

Petitioner has not demonstrated that Saunders' testimony

was false.  As such, it was not unreasonable for his counsel

to fail to raise the issue that Saunders had testified

falsely.  Furthermore, as Petitioner has not demonstrated that

Saunders falsely testified, he has not shown prejudice

resulting from his attorney's failure to "correct" Saunders'

testimony or raise the issue.  Petitioner therefore is not

entitled to relief as to these claims.

## V.   Failure to Move to Suppress Saunders' Testimony

Petitioner alleges evidence was unlawfully obtained through Saunders while Saunders was on bond.   Petitioner claims that Saunders violated his bond conditions by unlawfully working as a confidential informant and, as such, his counsel should have moved to suppress all evidence obtained through Saunders' "illegal" acts.   In support of his claim, Petitioner asserts the following were conditions of Saunders' bond:

(1)   the defendant shall not purchase, possess, use, distribute or administer any controlled substance.

(2)   the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered.

(3)   the defendant should notify pretrial release when questioned by law enforcement officers.

(4)   the defendant shall not enter into any agreement to act as an informer or special agent or law enforcement agency.

(CV-D-2, p. 11.)

There is, however, absolutely no evidence that any of the foregoing bond conditions alleged by Petitioner were in fact placed upon Saunders.   Significantly, the January 5, 2007 Order of Release as to Curtis Saunders does not include any of the conditions alleged by Petitioner.   (Case No. 8:06-Cr-505-

19

T-23MSS, D-24.) At the trial regarding Petitioner's 2004 case, Saunders truthfully testified he was let out on bond for purposes of cooperating with law enforcement. (04-Cr-D-47, p. 58.) He explained that some of his conditions of release included drug testing, electronic monitoring, and house arrest and that he had complied with those conditions. (Id. at p. 64.) At the trial related to the 2007 case, Saunders again testified that his conditions of release included mandatory drug testing, electronic monitoring and house arrest. (07-Cr-D-129, p. 8.) Saunders' case file does not indicate that Saunders violated any of the bond conditions actually imposed.

While Petitioner is correct that the Order of Release included a provision that "[t]he defendant shall not commit a federal, state or local crime during the period of his/her release...." (Case No. 8:06-Cr-505-T-23MSS, D-24, ¶ 4), Saunders' assistance to law enforcement in Petitioner's 2007 criminal case did not constitute a crime. In this regard, Saunders' actions with respect to the 2007 criminal case were an exercise of public authority on behalf of a law enforcement agency. As Petitioner has failed to demonstrate that Curtis Saunders violated his conditions of bond, his attorney's failure to file a frivolous motion move to suppress evidence

based on such a violation was not unreasonable. Nor has Petitioner demonstrated any prejudice. As such, Petitioner is not entitled to any relief as to this claim.

## VI. Failure to Challenge Jury's Finding Regarding Quantity

Petitioner argues that the jury's finding in the 2004 case was against the greater weight of the evidence. Petitioner argues that his counsel was ineffective in failing to file a motion for judgment of acquittal or for new trial attacking the credibility of the witnesses.

First, Petitioner's attorney moved for a judgment of acquittal at the close of the Government's case. (04-Cr-D-34, D-47, p. 127.) Attorney Seiden argued that the witnesses were not credible as they were convicted felons who had something to gain by testifying against Petitioner. The Court denied the motion. (D-34.) Seiden's failure to file a post-trial motion for judgment of acquittal did not prejudice Petitioner because the Government presented evidence sufficient to convict Petitioner. While Petitioner attacks the credibility of some of the Government witnesses, credibility determinations were within the province of the jury, and the Court cannot say that no reasonable trier of fact could find Petitioner guilty beyond a reasonable doubt.

Similarly, Seiden's failure to file a post-trial motion for new trial did not prejudice Petitioner. To warrant a new trial, "[t]he evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." United States v. Fernandez, 905 F.2d 350, 352 (11th Cir. 1990) (citing United States v. Martinez, 763 F.2d 1297, 1313 (11th Cir. 1985)). Moreover, the Court must find that the verdict is against the great weight of evidence in order to grant a new trial on evidentiary grounds. United States v. Sullivan, 1 F.3d 1191, 1196 (11th Cir. 1993) (citing Hewitt v. B.F. Goodrich Co., 732 F.2d 1554, 1556 (11th Cir. 1984)). Petitioner has not shown that the interest of justice requires a new trial in this case. The evidence did not preponderate heavily against the verdict. As the jury's finding Petitioner guilty as to Counts One and Two of the Third Superseding Indictment in the 2004 case does not amount to a serious "miscarriage of justice," Petitioner is not entitled to the relief he seeks.

## EVIDENTIARY HEARING

Lastly, as to Petitioner's request for an evidentiary hearing, Petitioner has failed to demonstrate the need for such a hearing. The Court need not conduct an evidentiary hearing where it is evident from the record that the petitioner was not denied effective assistance of counsel.

22

Diaz v. United States, 930 F.2d 832, 834 (11th Cir. 1991). Based on the foregoing analysis, the Court does not find that an evidentiary hearing is warranted.

It is therefore ORDERED that:

1)  Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (8:11-CV-717 D-1; 8:04-CR-186 D-84 and 8:11-CV-718 D-1; 8:07-CR-361 D-167) is DENIED.

2)  The Clerk is directed to enter judgment in favor of the Government and to CLOSE the civil cases.

## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO APPEAL IN FORMA PAUPERIS

IT IS FURTHERED ORDERED that Petitioner is not entitled to a certificate of appealability.  A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his petition.   28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a certificate of appealability (COA).  Id.  "A [COA] may issue … only if the applicant has made a substantial showing of the denial of a constitutional right."  Id. at § 2253(c)(2).  To make such a showing, a petitioner "must demonstrate that

reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances. Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

DONE AND ORDERED at Tampa, Florida this 1st day of March, 2012.

WILLIAM J. CASTAGNA
SENIOR UNITED STATES DISTRICT